IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Summitt Logistics & Brokerage, LLC, et al., | ) | Case No. 09-90630-BHL-11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

### DEBTORS' CONSOLIDATED PLAN OF REORGANIZATION

Summitt Logistics & Brokerage, LLC ("Logistics"), Summitt Trucking, LLC ("Trucking"), Tractor Leasing, LLC ("Tractor Leasing"), and Trailer Leasing, LLC ("Trailer Leasing" and collectively with Logistics, Trucking, and Tractor Leasing, the "Debtors"), debtors and debtors in possession, hereby propose Debtors' Consolidated Plan of Reorganization ("Plan") pursuant to the provisions of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.  This Plan proposes the substantive consolidation of each Debtor's estates for all purposes of the Plan including voting and distribution to creditors, but upon emergence each of the Debtors will retain its own separate legal entity.

The Plan will be implemented and funded by the sale and sale/leaseback of certain of the Debtors' assets with the proceeds being used to satisfy the secured claims of Debtors' senior lender, pay administrative expenses, provide working capital and partially fund an unsecured creditors' trust to manage distributions to the estates' unsecured creditors.  Some of the current owners will contribute new capital in exchange for the membership interests in the reorganized companies.

The Debtors believe that this Plan provides a better return to their creditors than liquidation, continues the employment of workers and will allow the Debtors to continue to

generate and spend around $30 million annually in economically hard hit southern Indiana. The Debtors urge creditors to vote in favor of the Plan.

BDDB01 6179730v11

# Table of Contents

**Page**

ARTICLE I Definitions And Terms Of Construction ...................................................... 4
    A.    Definitions.                                                           4
    B.    Terms of Construction.                                         13
ARTICLE II Provision For Payment Of Administrative Claims .................................. 14
ARTICLE III Designation Of Classes Of Claims And Interests .................................. 16
ARTICLE IV Treatment Of Claims And Interests Under The Plan .......................... 17
ARTICLE V Means For Implementation And Execution Of Plan ............................ 25
ARTICLE VI Substantive Consolidation Of The Debtors For The  Purpose Of Plan Distributions And Assessment And Payment Of US Trustee Fees Only ......................................... 29
ARTICLE VII Provisions Governing Distributions .................................................. 30
ARTICLE VIII Procedures For Resolving And Treating Disputed Claims And Interests ........... 33
ARTICLE IX Treatment Of Executory Contracts And Unexpired Leases ................ 34
ARTICLE X Effectiveness Of The Plan .................................................................. 37
ARTICLE XI Effect Of Confirmation .................................................................... 38
ARTICLE XII Retention Of Jurisdiction ................................................................ 39
ARTICLE XIII Acceptance Or Rejection Of The Plan .......................................... 41
ARTICLE XIV Miscellaneous Provisions ............................................................... 41

BDDB01 6179730v11

## ARTICLE I

### Definitions And Terms Of Construction

A.      Definitions.

For purposes of the Plan (as hereinafter defined) and as used in the Disclosure Statement (as hereinafter defined), the following terms shall have the respective meanings set forth below:

1.1     "Administrative Claims Bar Date" means the date that is thirty (30) days after the Effective Date.

1.2     "Administrative Expense Claim" means any Claim arising or accruing on or after the Petition Date which is entitled to Priority Status pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, all expenses of administration of the Debtors' Chapter 11 Cases.

1.3     "Allowed" or "Allowed Claim(s)" means claims: (a) listed in the Schedules and any amendments thereto as undisputed, noncontingent and liquidated; (b) for which proofs of claim have been timely filed with the Bankruptcy Court and no objection having been filed by the applicable deadline; (c) for which proofs of claim have been filed and objections thereto filed by the Debtors, to the extent such objection is determined in favor of the claimant by entry of a Final Order; and (d) with respect to fees and expenses of professional persons, the amount of such fees and expenses allowed by the Bankruptcy Court or any procedure set forth in the terms of the confirmed Plan.

1.4     "Avoidance Actions" means claims for the avoidance of any transfer by or obligation of the Debtors under chapter 5 of the Bankruptcy Code or the recovery of the value of

such transfer, including but not limited to fraudulent transfer and preference actions and actions which can be brought under the trustee's strong-arm powers pursuant to § 544 of the Bankruptcy Code, but shall not include any Avoidance Action against any Insider (as defined in the Bankruptcy Code) or a Related Lender.

1.5    "Bankruptcy Code" means the United Stated Bankruptcy Code, 11 U.S.C. §§101 et al.

1.6    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Indiana.

1.7    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

1.8    "Bar Date" means June 30, 2009 for all claimants other than governmental entities and August 31, 2009 for governmental entities, the dates established by the Bankruptcy Court for filing proofs of claims in the Chapter 11 Cases.

1.9    "Business Day" means a day other than a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a), or any other day when the Bankruptcy Court is closed for ordinary business.

1.10    "Cash" means cash and cash equivalents.

1.11    "Cause of Action" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedy, right to an equitable remedy, right to payment and claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, but does not include Avoidance Actions.

1.12    "Chapter 11" means chapter 11 of the Bankruptcy Code.

1.13    "Chapter 11 Cases" means the Chapter 11 cases of the Debtors pending in the Bankruptcy Court.

1.14    "Claim(s)" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.15    "Class" means a Claim or Interest or a group of Claims or Interests consisting of those Claims or Interests which are substantially similar to each other, as classified under the Plan, or a Claim or Interest or a group of Claims or Interests classified by amount as may be reasonable and necessary as administrative convenience claims, or a group of Claims or Interests which are otherwise separately classified in accordance with the Plan and the Bankruptcy Code.

1.16    "Claim Objection Deadline" means the date that is sixty (60) days after the Effective Date, unless such date is extended by order of the Bankruptcy Court pursuant to a motion filed to extend the Claim Objection Deadline.

1.17    "Committee" means the Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 Cases on March 16, 2009.

1.18    "Confirmation Date" means the date of entry of the Confirmation Order.

1.19    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan under § 1129 of the Bankruptcy Code.

1.20    "Covenant Solutions" means the new entity that will finance the Reorganized Debtors accounts receivable pursuant to the New Accounts Receivable Financing Agreement.

1.21    "Creditors' Trust" means the trust created pursuant to the Plan for the purpose of facilitating distributions from the Creditors' Trust Account to holders of Allowed Class 9 and 10 Claims.

1.22    "Creditors' Trust Account" means that account to be established for the collection of funds to be used to make distributions to the holders of Allowed Claims in Classes 9 and 10.  All disbursements from the Creditors' Trust Account shall be made by the Creditors' Trustee.

1.23    "Creditors' Trust Agreement" means the trust agreement by and between the Reorganized Debtors as grantors and the Creditors' Trustee establishing the Creditors' Trust for the benefit of the holders of Allowed Claims in Classes 9 and 10.  The Creditors' Trust Agreement shall be substantially in the form contained in the Plan Supplement.

1.24    "Creditors' Trust Payment" means the initial payment due on the Effective Date to the Creditors' Trust by the Reorganized Debtors funded by the New Equity Holders and the Reorganized Debtors in the aggregate amount of $75,000.00.

1.25    "Creditors' Trustee" means the trustee of the Creditors' Trust appointed pursuant to the Plan.

1.26    "Debtors" means collectively, Summitt Logistics & Brokerage, LLC ("Logistics"), Summitt Trucking, LLC ("Trucking"), Tractor Leasing, LLC ("Tractor Leasing"), and Trailer Leasing, LLC ("Trailer Leasing"), debtors and debtors in possession in the Chapter 11 Cases.

BDDB01 6179730v11

1.27    "Deficiency Claim" means with respect to any Claim secured by a lien or a security interest in any property of any Debtor having a value of less than the amount of such Claim (after taking into account other liens and security interests of higher priority in such property and any amount recovered by a creditor by selling any Collateral returned to that Creditor), the portion of such Claim equal to the difference between (a) the Allowed amount of the Claim and (b) the Allowed amount of the secured portion of such Claim (which Allowed secured amount may be set pursuant to this Plan).

1.28    "DIP Financing Agreement" means the Post-Petition Credit Agreement by and between TAB and the Debtors as approved by the Bankruptcy Court and amended and/or restated from time to time.

1.29    "DIP Financing Order" means the order of the Bankruptcy Court entered on or about April 20, 2009 approving the DIP Financing Agreement.

1.30    "Disclosure Statement" means the Debtors' Disclosure Statement to Debtors' Consolidated Plan of Reorganization.

1.31    "Disputed Claim(s)" means any Claim for which an Allowed Claim has not yet been determined, and with respect to which an objection has been interposed on or prior to the Claim Objection Deadline (as may be extended from time to time), or such other date as may be fixed by the Bankruptcy Court or the Plan and to the extent an objection relates to the allowance of only a part of a Claim, such claim shall be a Disputed Claim only to the extent of the amount objected to.

1.32    "Distribution Date" means the first business day first occurring sixty (60) days after the Effective Date.

1.33    "Effective Date" means that date on which the Plan becomes effective that occurs no sooner than eleven (11) days after the entry of a Final Order confirming the Plan, and established by filed notice of the Reorganized Debtor.

1.34    "Equity Holders" means those holders of membership interests in any of the Debtors who were holders of such interests as of the Petition Date.

1.35    "Estates" means the Chapter 11 bankruptcy estates of the Debtors.

1.36    "Estates' Assets" means all of the Debtors' property, rights, or interests existing as of the Confirmation Date.

1.37    "Executory Contracts" means any contract or unexpired lease to which the Debtors are a party and which is executory within the meaning of § 365 of the Bankruptcy Code.

1.38    "Face Amount" means, with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of Claim with the Bankruptcy Court on or before the Bar Dates, the amount of such Claim if it is listed in the Schedules as not disputed, not contingent, or unliquidated, or (b) if the holder of such Claim has filed a proof of Claim with the Bankruptcy Court on or before the Bar Dates, the amount stated in such proof of Claim.

1.39    "Final Order" means an order of the Bankruptcy Court that is not the subject of a pending appeal and the time to appeal or to seek review or rehearing shall have expired, and which has not been reversed, stayed, modified, or amended.

1.40    "General Unsecured Claim(s)" means an unsecured Pre-Petition Claim against the Debtors that is not entitled to Priority Status, and is not a Deficiency Claim or a Claim of a Related Lender.

1.41    "Insider" means any individual or entity defined as an insider of the Debtors pursuant to § 101(31) of the Bankruptcy Code.

1.42    "Interests" means the rights of the Equity Holders as owners and holders of any and all membership interests of the Debtors.

1.43    "New Accounts Receivable Financing Agreement" means the agreement in form and substance acceptable to the Debtors and Reorganized Debtors, effective on the Effective Date, by and between Covenant Solutions and Reorganized Debtors under which Covenant Solutions will finance the accounts receivable of the Reorganized Debtors on and after the Effective Date.

1.44    "New Equity Contribution" means the waiver of the $192,617.61 administrative rent claim owed by the Debtors to Silver Creek, LLC plus the sum of $25,000.00 in Cash with the Cash contributed to the Creditors' Trust Payment and given as consideration for the New Equity Holders receiving the membership units in the Reorganized Debtors.

1.45    "New Equity Holders" means David L. Summitt and Jesse Ballew.

1.46    "Person" means an individual, partnership or corporation, but does not include a governmental unit.

1.47    "Petition Date" means March 2, 2009, the date on which the Debtors commenced their voluntary Chapter 11 Cases.

1.48    "Plan" means the Debtors' Consolidated Plan of Reorganization and any amendments hereto or modifications hereof.

1.49    "Plan Sale" means the sale of tractors and trailers composing part of the TAB Collateral pursuant to this Plan and § 363 of the Bankruptcy Code free and clear of liens, claims, and encumbrances and generating funds to pay part of the Class 1 Claim, pay Administrative and Priority Claims, and provide working capital to the Reorganized Debtors.

The term sheet evidencing the terms of the transactions of the Plan Sale is attached as <u>Exhibit A</u> to this Plan and as <u>Exhibit 2</u> to the Disclosure Statement.

      1.50    "<u>Plan Supplement</u>" means the supplemental appendix to this Plan, filed at least twenty (20) days prior to the hearing on the proposed Disclosure Statement as it may be modified, amended or supplemented, that will contain draft forms of the Creditors' Trust Agreement, the Schedule of Assumed Contracts and Leases, the Schedule of Related Lenders and such other documents as may be necessary or appropriate to implement the terms and provisions of this Plan.

      1.51    "<u>Prepetition Claim(s)</u>" means any Claim(s) against the Debtors arising or accruing prior to the Petition Date.

      1.52    "<u>Priority Claim(s)</u>" means all Claim(s) as defined in § 507 of the Bankruptcy Code, except Claims as defined in §§ 507(a)(2), (a)(3) and (a)(8) of the Bankruptcy Code.

      1.53    "<u>Priority Status</u>" means the priority in distribution which is afforded to certain Claims against the Debtors pursuant to § 507(a) of the Bankruptcy Code.

      1.54    "<u>Professional Persons</u>" means persons retained by order of the Bankruptcy Court pursuant to §§ 327, 328, 330 or 1103 of the Bankruptcy Code.

      1.55    "<u>Pro Rata</u>" means the proportion that the amount of an Allowed Claim in a particular Class or Classes bears to the aggregate amount of all Allowed Claims in such Class or Classes.

      1.56    "<u>Rejection Claim</u>" means any Claim arising under § 502(g) of the Bankruptcy Code and any Claim of a holder of an Executory Contract which pursuant to a Final Order of the Bankruptcy Court is allowed as a Claim under § 502(g) of the Bankruptcy Code.

1.57    "Related Lenders" means insiders and affiliates of the Debtors that loaned the Debtors money or provided services or other financial accommodations to the Debtors prior to the Petition Date and resulting in a Claim against a Debtor.  Related Lenders include each of the Debtors, Summit Holdings, LLC, David L. Summitt, Jesse Ballew, Silver Creek LLC, and Stock Investments, LLC.

1.58    "Reorganized Debtors" means the Debtors as reorganized and reconstituted by the Plan on and after the Effective Date.

1.59    "Schedule of Assumed Contracts and Leases" means the schedule of executory contracts and unexpired leases to be assumed pursuant to § 365 of the Bankruptcy Code consistent with the terms and conditions of this Plan. The Schedule of Assumed Leases and Contracts is included in the Plan Supplement.

1.60    "Schedules" means the Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtors with the Bankruptcy Court.

1.61    "Secured Claim" means that portion of an Allowed Claim that is secured under § 506(a) of the Bankruptcy Code by a Security Interest in property of the Estates to the extent of the value of such creditor's interest in a Debtor's property.

1.62    "Security Interest" means a mortgage, deed of trust, chattel mortgage, assignment of rent, unavoidable judgment lien of record, tax lien of record, or consensual lien giving the holder thereof a validly perfected under the UCC non- preferential and non-avoidable lien on the real or personal property of the Debtors.

1.63    "TAB" means Transportation Alliance Bank.

1.64    "TAB Collateral" means the 74 tractors and 422 trailers owned by the

Debtors and which secure the Debtors' obligations to TAB under the TAB Credit Facilities and

the DIP Financing Agreement.

1.65    "TAB Credit Facilities" means collectively:

(a)    that certain Promissory Note, with TAB as the lender, dated September 30, 2005, in the original principal sum of $1,080,824.87, together with ancillary mortgages; (b)that certain Promissory Note, with TAB as the lender, dated September 30, 2005, in the original principal sum of $904,500.00, together with ancillary mortgages; (c) that certain Term Promissory Note, dated July 3, 2007, in the original principal sum of $3,900,000, together with ancillary mortgages and personal property security agreements and lien perfected titles to such equipment, originally with Textron Financial Corporation ("Textron") as lender, which facility was purchased by and assigned to TAB pre-petition (the "Textron Term Note"); (d) that certain Textron Corporation Factoring Agreement dated July 3, 2007, as amended on February 27, 2008, with ancillary mortgages, guarantees, security and perfection documents, originally with Textron as Purchaser/Lender, which facility was purchased by and assigned to TAB pre-petition (the "Textron A/R Facility"); (e) that certain Master Lease Agreement, dated June 18, 2004, by and between TAL, as lessor, and Trailer Leasing, LLC, as lessee, together with Schedules thereto; (f) that certain Master Lease Agreement, dated August 4, 2004, by and between TAL, as lessor, and Tractor Leasing, LLC, as lessee, together with all Schedules thereto; and (g) a Letter of Credit.

1.66    "TAL" means Transportation Alliance Leasing.

1.67    "US Trustee" means the Office of the United States Trustee.

1.68    "US Trustee Fees" means the fees assessed under 28 U.S.C. 1930 against

the Debtors or Reorganized Debtors.

B.    Terms of Construction.

1.69    Capitalized Terms: The capitalized terms of this Plan shall have the

meanings set forth in the Plan. In the event a capitalized term of the Plan is not defined in the

Plan, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules. In

the event a capitalized term of the Plan is not defined in the Plan, the Bankruptcy Code, or the

Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or

more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of the Plan and the Bankruptcy Code.

1.70    Reasonable Construction: The terms of the Plan shall not be construed against any person but shall be given a reasonable construction, consistent with the purposes of the Plan and the Bankruptcy Code.

1.71    Herein, Hereof, Hereto, and Hereunder: The words "herein," "hereof," "hereto," "hereunder," and others of similar import, unless clearly restricted to a particular section refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

1.72    Plural: Unless otherwise specified, the plural shall include the singular and the singular shall include the plural.

1.73    Gender: Unless otherwise specified, the references to the masculine shall include the feminine and reference to the feminine shall include the masculine.

1.74    Including: The term "including" shall not be deemed to be exclusive and shall be deemed to mean "including without limitation."

## ARTICLE II

### Provision For Payment Of Administrative Claims,

2.1    Administrative Expense Claims:  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, the holder of an Allowed Administrative Expense Claims shall receive in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim on the later of (a) the Effective Date, and (b) the date on which said entity becomes a holder of such Allowed Administrative Expense Claim,

-14-

provided however, that Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors as debtors in possession, and not due and payable by the Effective Date, shall be paid by the Reorganized Debtors in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such transactions.    Any person seeking payment of an asserted Administrative Expense Claim under § 503 of the Bankruptcy Code, other than a governmental unit seeking payment of an expense under § 503(b)(1)(B) or (C) or entities or persons seeking payment for goods or services provided in the ordinary course and not yet due by their terms or by agreement, that was incurred on or before the Effective Date but which has not been paid by the Debtors, shall be required to file an application for the allowance of final payment of said claim on or before the Administrative Claims Bar Date, and any such claim not filed by the Administrative Claims Bar Date shall be forever barred and discharged. Objections to any such application shall be filed within sixty (60) days after the Effective Date.  Notwithstanding the foregoing, Professional Persons with Administrative Expense Claims shall comply with the provisions of § 7.5 of this Plan.

       2.2     <u>Allowed Priority Claims</u>:  Except to the extent that a holder of and the holders of Allowed Priority Claims agrees to a different treatment, the holder of an Allowed Priority Claim will receive in full and complete settlement, satisfaction and discharge of its Allowed Priority Claim, Cash equal to the unpaid portion of such Allowed Priority Claim, on the later of (a) the Effective Date, and (b) the date on which said entity becomes a holder of such Allowed Priority Claim.  The Debtors are not aware of any Priority Claims that would become Allowed Priority Claims that are not Priority Tax Claims.

-15-

2.3     Allowed Priority Tax Claims:  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, at the sole option of the Reorganized Debtors, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate of four percent (4%) per annum over a period not exceeding five (5) years after the Petition Date which shall begin on the later of (i) the Distribution Date, and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business by the Reorganized Debtors as such obligations become due.

## **ARTICLE III**

### Designation Of Classes Of Claims And Interests

For purposes of the Plan, Claims and Interests are classified as follows:

3.1     "Class 1" shall consist of the Secured Claims of TAB and TAL under the TAB Credit Facilities and the DIP Financing Agreement.

3.2     "Class 2" shall consist of the Secured Claim of Leaf Funding, Inc.

3.3     "Class 3" shall consist of the Secured Claim of NEC Financial Services, L.L.C.

3.4     "Class 4" shall consist of the Secured Claim of General Electric Capital Corporation.

3.5     "Class 5" shall consist of the Secured Claim of Plains Capital Leasing, LLC.

-16-

3.6    "Class 6" shall consist of the Secured Claim of Navistar Financial Corporation.

3.7    "Class 7" shall consist of the Secured Claim of Volvo Financial Services, a division of VFS US, LLC.

3.8    "Class 8" shall consist of any other Secured Claims.

3.9    "Class 9" shall consist of the Deficiency Claims.

3.10    "Class 10" shall consist of the General Unsecured Claims other than any Deficiency Claims or any claims of Related Lenders.

3.11    "Class 11" shall consist of the Claims of the Related Lenders.

3.12    "Class 12" shall consist of the Interests of the Equity Holders.

## ARTICLE IV

### Treatment Of Claims And Interests Under The Plan

Claims and Interests shall receive the following treatment under the Plan:

4.1    Class 1 Claim (TAB and TAL Secured Claim)

(a)    Impairment: Class 1 is impaired by this Plan and is entitled to vote.

(b)    Treatment:  In full and complete satisfaction, discharge and release of the Class 1 Claim, the holder of the Allowed Class 1 Claim will receive the proceeds of the Plan Sale of 74 tractors and 422 trailers of the TAB Collateral in the amount of that part of the Allowed Class 1 Claim representing the debt associated with the tractors and trailers and the overline advance of $1 million, plus the collection of the Debtors' accounts receivable assigned to TAB through the Business Day occurring prior to the Effective Date.  Any amounts paid to or collected by TAB under this Plan for its Class 1 Claim in excess of its Allowed Secured Claim shall be returned to the Reorganized Debtors on or before the Distribution Date.

(c)    Retention of Lien: The holder of the Allowed Class 1 Claim shall retain its lien on the TAB Collateral or its proceeds to secure the Debtors' obligations under the TAB Credit Facilities and the DIP Financing Agreement until paid in full; however, specific liens shall be released as to certain TAB Collateral as the sale proceeds are paid over or the accounts receivable are collected.

4.2    Class 2 Claim (Leaf Funding, Inc. Secured Claim)

(a)    Impairment: Class 2 is impaired by this Plan.

(b)    Treatment:    In full and complete satisfaction, discharge and release of the Class 2 Claim, the holder of the Allowed Class 2 Claim shall receive, at the option of the Debtors, (i) one hundred percent (100%) of the Allowed Class 2 Claim as determined under 506(a) of the Bankruptcy Code, plus four percent (4%) per annum simple interest, in equal monthly installments of principal and interest over three (3) years with payments beginning on the Distribution Date, (ii) the proceeds of the sale or disposition of the collateral securing the Allowed Class 2 Claim to the extent of the value of the holder's secured interest in such collateral, net of the costs of disposition of such collateral, (iii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code, including the surrender of any such collateral; or (iv) such other treatment as the Debtors and the holder of the Class 2 Claim may agree. In the event the Debtors determine to surrender or otherwise dispose of the collateral securing the Class 2 Claim, the Debtors shall provide notice to the Holder of the Class 2 Claim, TAB, the Committee and the US Trustee prior to the Confirmation Date.

(c)    Retention of Liens: The holder of the Allowed Class 2 Claim shall continue to retain any liens on the collateral which secured the Class 2 Claim on the Petition Date to the extent said collateral has not been sold or otherwise liquidated prior to the date of the

-18-

Confirmation Order, in which case the liens shall attach to the proceeds, until paid in full or the collateral is returned.

4.3    Class 3 Claim (NEC Financial Services, L.L.C. Secured Claim)

(a)    Impairment: Class 3 is impaired by this Plan.

(b)    Treatment:  The Class 3 Claim is Allowed in the amount of $100,000.00. In full and complete satisfaction, discharge and release of the Class 3 Claim, the holder of the Allowed Class 3 Claim shall receive, at the option of the Debtors, (i) one hundred percent (100%) of the Allowed Class 3 Claim, plus interest, in equal monthly installments of principal and interest over three (3) years with payments beginning on the Effective Date, (ii) the proceeds of the sale or disposition of the collateral securing the Allowed Class 3 Claim to the extent of the value of the holder's secured interest in such collateral, net of the costs of disposition of such collateral, (iii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code, including the surrender of any such collateral; or (iv) such other treatment as the Debtors and the holder of the Class 3 Claim may agree. In the event the Debtors determine to surrender or otherwise dispose of the collateral securing the Class 3 Claim, the Debtors shall provide notice to the Holder of the Class 3 Claim, TAB, the Committee, and the US Trustee prior to the Confirmation Date.

(c)    Retention of Liens: The holder of the Allowed Class 3 Claim shall continue to retain any liens on the collateral which secured the Class 3 Claim on the Petition Date to the extent said collateral has not been sold or otherwise liquidated prior to the date of the Confirmation Order, in which case the liens shall attach to the proceeds, until paid in full or the collateral is returned.

4.4    Class 4 Claim (General Electric Capital Corporation Secured Claim)

-19-

(a)     Impairment: Class 4 is impaired by this Plan.

(b)     Treatment:  The Class 4 Claim is Allowed in the amount of $5,574.34.  In full and complete satisfaction, discharge and release of the Class 4 Claim, the holder of the Allowed Class 4 Claim shall receive one hundred percent (100%) of the Allowed Class 4 Claim on the Distribution Date.

(c)     Retention of Liens: The holder of the Allowed Class 4 Claim shall continue to retain any liens on the collateral which secured the Class 4 Claim on the Petition Date until paid in full.

4.5     Class 5 Claim (Plains Capital Leasing, LLC Secured Claim)

(a)     Impairment: Class 5 is impaired by this Plan.

(b)     Treatment:   In full and complete satisfaction, discharge and release of the Class 5 Claim, the holder of the Allowed Class 5 Claim shall receive, at the option of the Debtors, either (i) one hundred percent (100%) of the Allowed Class 5 Claim as determined under § 506(a) of the Bankruptcy Code, plus interest, in equal monthly installments of principal and interest over the remaining term of the Debtors' agreements with such holder, (ii) the proceeds of the sale or disposition of the collateral securing the Allowed Class 5 Claim to the extent of the value of the holder's secured interest in such collateral, net of the costs of disposition of such collateral, (iii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code, including the surrender of any such collateral; or (iv) such other treatment as the Debtors and the holder of the Class 5 Claim may agree. In the event the Debtors determine to surrender or otherwise dispose of the collateral securing the Class 5 Claim, the Debtors shall provide notice to the Holder of the Class 5 Claim, TAB, the Committee, and the US Trustee prior to the Confirmation Date.

(c)      Retention of Liens: The holder of the Allowed Class 5 Claim shall continue to retain any liens on the collateral which secured the Class 5 Claim on the Petition Date to the extent said collateral has not been sold or otherwise liquidated prior to the date of the Confirmation Order, in which case the liens shall attach to the proceeds, until paid in full or the collateral is returned.

4.6      Class 6 Claim (Navistar Financial Corporation Secured Claim)

(a)      Impairment: Class 6 is impaired by this Plan.

(b)      Treatment: In full and complete satisfaction, discharge and release of the Class 6 Claim, the holder of the Allowed Class 6 Claim shall receive, at the option of the Debtors, either (i) one hundred percent (100%) of the Allowed Class 6 Claim as determined under § 506(a) of the Bankruptcy Code, plus interest, in equal monthly installments of principal and interest over the remaining term of the Debtors' agreements with such holder, (ii) the proceeds of the sale or disposition of the collateral securing the Allowed Class 6 Claim to the extent of the value of the holder's secured interest in such collateral, net of the costs of disposition of such collateral, (iii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code, including the surrender of any such collateral; or (iv) such other treatment as the Debtors and the holder of the Class 6 Claim may agree. In the event the Debtors determine to surrender or otherwise dispose of the collateral securing the Class 6 Claim, the Debtors shall provide notice to the Holder of the Class 6 Claim, TAB, the Committee, and the US Trustee prior to the Confirmation Date.

(c)      Retention of Liens: The holder of the Allowed Class 6 Claim shall continue to retain any liens on the collateral which secured the Class 6 Claim on the Petition

BDDB01 6179730v11

Date to the extent said collateral has not been sold or otherwise liquidated prior to the date of the Confirmation Order, until paid in full or the collateral is returned.

        4.7      Class 7 Claim (Volvo Financial Services Secured Claim)

    (a)      Impairment: Class 7 is impaired by this Plan.

    (b)      Treatment: In full and complete satisfaction, discharge and release of the Class 7 Claim, the holder of the Allowed Class 7 Claim shall receive, at the option of the Debtors, either (i) one hundred percent (100%) of the Allowed Class 7 Claim as determined under § 506(a) of the Bankruptcy Code, plus interest, in equal monthly installments of principal and interest over the remaining term of the Debtors' agreements with such holder, (ii) the proceeds of the sale or disposition of the collateral securing the Allowed Class 7 Claim to the extent of the value of the holder's secured interest in such collateral, net of the costs of disposition of such collateral, (iii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code, including the surrender of any such collateral; or (iv) such other treatment as the Debtors and the holder of the Class 7 Claim may agree. In the event the Debtors determine to surrender or otherwise dispose of the collateral securing the Class 7 Claim, the Debtors shall provide notice to the Holder of the Class 7 Claim, TAB, the Committee, and the US Trustee prior to the Confirmation Date.

    (c)      Retention of Liens: The holder of the Allowed Class 7 Claim shall continue to retain any liens on the collateral which secured the Class 7 Claim on the Petition Date to the extent said collateral has not been sold or otherwise liquidated prior to the date of the Confirmation Order, until paid in full or the collateral is returned.

        4.8      Class 8 Claim (Other Secured Claims)

    (a)      Impairment: Class 8 is impaired by this Plan.

-22-

BDDB01 6179730v11

(b)    Treatment: In full and complete satisfaction, discharge and release of the Class 8 Claims, each holder of an Allowed Class 8 Claim shall receive, at the option of the Debtors, either (i) one hundred percent (100%) of the Allowed Class 8 Claim, plus interest, in equal monthly installments of principal and interest over the remaining term of the Debtors' agreements with such holder, (ii) the proceeds of the sale or disposition of the collateral securing the Allowed Class 8 Claim to the extent of the value of the holder's secured interest in such collateral, net of the costs of disposition of such collateral, (iii) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code, including the surrender of any such collateral; or (iv) such other treatment as the Debtors and the holder of the Class 8 Claim may agree. In the event the Debtors determine to surrender or otherwise dispose of the collateral securing the Class 8 Claim, the Debtors shall provide notice to the Holder of the Class 8 Claim, TAB, the Committee, and the US Trustee prior to the Confirmation Date.

(c)    Retention of Liens: The holders of Allowed Class 8 Claims shall continue to retain any liens on the collateral which secured the Class 8 Claim on the Petition Date to the extent said collateral has not been sold or otherwise liquidated prior to the date of the Confirmation Order, in which case the liens shall attach to the proceeds, until paid in full or the collateral is returned.

4.9    Class 9 (Deficiency Claims)

(a)    Impairment: Class 9 is impaired by this Plan.

(b)    Treatment: Holders of Allowed Class 9 Claims shall receive a Pro Rata beneficial interest in the Creditors' Trust *pari passu* with the holders of Allowed Class 10 Claims and shall share in any distributions from the Creditors' Trust Account *pari passu* with the holders of Allowed Class 10 Claims.

-23-

4.10    Class 10 (General Unsecured Claims)

(a)    Impairment: Class 10 is impaired by this Plan.

(b)    Treatment:  In full and complete satisfaction, discharge and release of the Class 10 Claims, each holder of an Allowed Class 10 Claim shall receive its Pro Rata share of the beneficial interest in the Creditors' Trust *pari passu* with the holders of Allowed Class 9 Claims and shall receive its Pro Rata share of the periodic distributions from the Creditors' Trust Account *pari passu* with the holders of Allowed Class 9 Claims.

4.11    Class 11 (Related Lenders Claims)

(a)    Impairment:  Class 11 is impaired by this Plan.

(b)    Treatment:  Holders of Class 11 Claims shall not receive a beneficial interest in the Creditors' Trust and shall not share in any distributions from the Creditor's Trust Account. In return for subordination of the Class 11 Claims to Classes 9 and 10, holders of Allowed Class 11 Claims shall receive a full release of any Causes of Action and avoidance actions (including all avoidance and preference actions under the Bankruptcy Code) that the Debtors, the Reorganized Debtors or the Estates may possess against such holders of Class 11 Claims and shall not be included or contributed in the Avoidance Actions that the Creditors' Trustee may prosecute on behalf of the Creditors' Trust. The schedule of Related Lenders shall be contained in the Plan Supplement. The Claim of any Person for amounts loaned the Debtors prior to the Petition Date who is not listed on the Schedule of Related Lenders will not be treated as a Class 11 Claim.

4.12    Class 12 (Equity Interests)

(a)    Impairment:  Class 12 is impaired by this Plan.

-24-

(b)      Treatment:  The Class 12 Interests shall be cancelled and membership interests in the Reorganized Debtors shall be issued to David L. Summitt and Jesse Ballew in consideration of the New Equity Contribution.

## ARTICLE V

### Means For Implementation And Execution Of Plan

5.1      Reorganized Debtors' Authority.  By confirmation of this Plan, the Reorganized Debtors are authorized to carry out their duties under this Plan. In carrying out such duties, the Reorganized Debtors shall comply with all applicable laws.

5.2      Reorganized Debtors' Rights, Duties and Obligations.  On and after the Effective Date, the Reorganized Debtors alone shall, subject to the terms of the Plan, have the following rights, duties and obligations, inter alia,:

(a)      to use, sell or lease any or all of the property of the Estates;

(b)      to distribute funds to holders of Allowed Claims, other than holders of Allowed Class 11 Claims, consistent with the terms of the Plan;

(c)      to file a final report and move to close the Chapter 11 Cases;

(d)      to comply with the terms of this Plan and the Confirmation Order, including all supplements and attachments thereto;

(e)      to pay US Trustee fees through the entry of final decrees closing the Chapter 11 Cases, and the preparation of post-confirmation reports required to be filed with the Bankruptcy Court;

(f)      to timely file all tax returns and pay all post-petition and post- Effective Date taxes; and

(g)      any other rights, duties and obligations of reorganized debtors under the Bankruptcy Code, or as otherwise necessary or appropriate to implement the Plan.

-25-

5.3     Assets of the Estates to Revest in Reorganized Debtors.  On the Effective Date, and upon payment of the New Equity Contribution to the Creditors' Trust, by virtue of the confirmation of the Plan, the assets of the Estates shall revest in the Reorganized Debtors, free and clear of all liens, claims or encumbrances except as set forth in the Plan, and no further order of the Bankruptcy Court shall be required for the Reorganized Debtors to use, transfer, or convey their property in any manner consistent with the terms of the Plan.

5.4     Reorganized Debtors' Authority.  Holders of Claims and Interests shall be paid in accordance with their priorities set forth in the Bankruptcy Code and the terms set forth in the Plan. Upon confirmation of this Plan, the Reorganized Debtors shall be designated pursuant to § 1142(b) to execute or deliver any instrument required to effect a transfer of any property dealt with by the Plan and to perform any act that is necessary for the consummation of the Plan.

5.5     Funding of the Reorganized Debtors and of the Plan.  The sources for funding of the Reorganized Debtors' post confirmation operations and the Plan shall include, but shall not be limited to, the Reorganized Debtors' operating income and the sale of personal property pursuant to the Plan Sale.  As part of the Plan Sale, Debtors are seeking approval of a series of transactions outlined in the term sheet attached as Exhibit A to this Plan.  The Plan Sale contemplates the sale free and clear of all liens, claims, and encumbrances by the Debtors and the purchase by Transport Enterprises Leasing, Inc. ("TEL") of all of Debtors' tractors and trailers currently financed by TAB and/or TAL and then leasing back to the Reorganized Debtors certain of the trailers and tractors under triple net leases.  In addition, TEL will lease additional tractors to the Reorganized Debtors to allow Reorganized Debtors to maintain a fleet of not less

than 120 tractors.  Finally, TEL will cause its affiliate Covenant Solutions to enter into a

financing agreement to replace TAB as the accounts receivable financer of the Debtors.

        The application and use of the proceeds generated from the sale of the tractors and

trailers is as follows:

| | | |
|---|---|---|
| Sale of 422 trailers | $4,351,500.00 | |
| Sale of 74 tractors | $1,300,000.00 | |
| Payoff of postpetition TAB overadvance | <$1,000,000.00> | |
| Payoff of TAL trailer debt | <$2,300,000.00> | |
| Payoff of TAL tractor debt | <$1,300,000.00> | |
| Net proceeds | $1,051,500.00 | |
| | | |
| Application of Proceeds | | |
|     Broker Commission | $   211,000.00 | |
|     Administrative/Priority Claims | $   450,000.00 | |
|     Contract Cures (initial payments) | $   190,500.00 | |
|     Payment to Creditors Trust | $     50,000.00 | |
|     Operating Funds | $   150,000.00 | |

        Additionally, upon entry of the Confirmation Order, the DIP Financing

Agreement will automatically be extended through and including the earlier of the Effective Date

and the payoff of the TAB and TAL debt.

        5.6    Creation and Funding of the Creditors' Trust Account.  On the Effective

Date or as soon thereafter as is practicable, a Creditors' Trust will be established for the benefit

of Holders of Allowed Class 9 and 10 Claims.  The Creditors' Trust Account will be funded by

the Creditors' Trust Payment due from the Reorganized Debtors and the New Equity Holders and

any recoveries from the Avoidance Actions as set forth below.

        5.7    Funding of the Unsecured Creditors' Trust.  On the Distribution Date, the

Reorganized Debtors will pay to the Unsecured Creditors' Trust the Creditors' Trust Payment in

the sum of $75,000.00 funded by the New Equity Contribution and the Reorganized Debtors.

5.8     Prosecution of the Avoidance Actions.  Pursuant to 11 U.S.C. 1123(b)(3)(B), the Creditors' Trustee, as the representative of the Estates, shall prosecute the Avoidance Actions. In the event the Creditors' Trustee is unable or unwilling to prosecute any Avoidance Action, the Reorganized Debtors, in their sole discretion, may prosecute such Avoidance Action at the Creditors' Trustee's request, for the benefit of the Unsecured Creditors' Trust.  The Creditors' Trustee and the Reorganized Debtors shall have the authority and ability to prosecute, settle and/or abandon any Avoidance Action initiated by them without the approval or order of the Bankruptcy Court.  For the avoidance of doubt, the Avoidance Actions do not include any Cause of Action or any action arising under the Bankruptcy Code against an Insider or a Related Lender.

5.9     Proceeds from the Avoidance Actions.  All proceeds of the Avoidance Actions, net of payment of all costs and expenses, including fees and expenses of professionals retained by the Creditors' Trust or Reorganized Debtors in connection with the prosecution of such claims, shall be paid to the Creditors' Trust Account and shall be used exclusively to fund the payments of the holders of Allowed Class 9 and 10 Claims on account of such Claims and the fees and expenses of the Creditors' Trustee.

5.10     Distributions to Class 9 and 10 Claimholders.  The Creditors' Trustee shall make periodic distributions to holders of Allowed Class 9 and 10 Claims on a Pro Rata basis from the Creditors' Trust Account. The Creditor's Trustee shall have the discretion as to when the distributions are to be made, but in no event shall the distributions be made on less than on an annual basis; provided, however, that the Creditors' Trustee shall not be required to make a distribution until 2012.

5.11     Costs and Expenses of the Creditor's Trustee.  All costs and expenses of the Creditor's Trustee, including reasonable attorneys' fees incurred in the performance of his duties, shall be paid from the Creditors' Trust Account without the need to obtain further Order of the Bankruptcy Court to authorize the payment of such costs and expenses. The Creditor's Trustee shall be entitled to reimbursement of all out of pocket expenses. The Reorganized Debtors shall have no obligation to fund the Creditors' Trust other than the Creditors Trust Payment.

5.12     The identity of the Creditors' Trustee shall be contained in Creditors' Trust Agreement.

## ARTICLE VI

### Substantive Consolidation Of The Debtors For The
### Purpose Of Plan Distributions And Assessment
### And Payment Of US Trustee Fees Only

6.1     Consolidation of Cases.  The Chapter 11 Cases of the Debtors will be substantively consolidated into a single case for all purposes under the Plan including voting and confirmation.  All property of the individual Debtor's Estate will be deemed to be the property of the consolidated Estates.  All Claims against a Debtor and its Estate will be deemed to be a Claim against the consolidated Debtors, any proof of Claim filed against one or more of the Debtors will be deemed to be a single Claim filed against the consolidated Estates, and all duplicate proofs of Claim for the same Claim filed against more than one Debtor will be deemed expunged.  A list of all duplicate claims to be expunged will be part of the Plan Supplement. Due to the substantive consolidation of the Debtors and their Estates for distributions under the Plan, all Claims by a Debtor against another Debtor will be waived and expunged.  Furthermore, except as provided herein, any Claim based upon prepetition unsecured guaranties by one Debtor in favor of one or more Debtors or other basis of co-Debtor liability will be eliminated, and no distributions under the Plan will be made on account of such Claims based upon such guaranties

-29-

or other basis of co-Debtor liability.  For the purposes of any setoff authorized under § 553 of the

Bankruptcy Code, the Debtors will be treated as one consolidated Entity so that, subject to the

other provisions and requirements of § 553 of the Bankruptcy Code, prepetition debts due to any

of the Debtors may be setoff against the prepetition debts of any other of the Debtors.

      6.2    No Merger.  Notwithstanding the foregoing, the Plan will not result in the

merger or otherwise affect the separate legal existence of each Debtor, other than with respect to

distribution rights under the Plan and the assessment and payment of US Trustee Fees.

Furthermore, the substantive consolidation of the Debtors shall not:  (a) impair the validity or

enforceability of any guarantees that exist under or with respect to any Executory Contracts

assumed under the Plan; (b) affect valid, enforceable and unavoidable security interests that

would not otherwise be terminated under the Plan; or (c) have the effect of creating a Claim in a

Class different from the Class in which a Claim would have been placed absent substantive

consolidation.

## ARTICLE VII

### Provisions Governing Distributions

      7.1    Distributions.  The Creditors' Trust shall, in accordance with the terms and

conditions of the Plan, make distributions to holders of Class 9 and 10 Claims as set forth herein.

The Reorganized Debtors shall, in accordance with the terms and conditions of the Plan, make

distributions to holders of all other Allowed Claims.

      7.2    Delivery of Distributions and Undeliverable Distributions.  Distributions to

holders of Allowed Claims shall be made at the address of each such holder as set forth on the

Schedules filed with the Bankruptcy Court unless superseded by the address set forth on the

proofs of Claim filed by such holders or other writing notifying the Creditors' Trustee or the

Reorganized Debtors of a change of address. If any holder's distribution is returned as

-30-

undeliverable, no further distributions to such holder shall be made unless and until the Creditors' Trustee or the Reorganized Debtors are notified of such holder's then current address. All claims for undeliverable distributions shall be made on or before sixty (60) days after the date such undeliverable distribution was initially made.

7.3    Time Bar to Cash Payments.  Checks issued by the Reorganized Debtors in respect of Allowed Claims, other than Class 9 and 10 Claims, shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtors by the holder of the Allowed Claim other than Class 9 and 10 Claims, to whom such check was originally issued. Any claim in respect of such voided check shall be made on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check. Checks issued by the Creditors' Trustee in respect of Class 9 and 10 Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any such voided check shall be made to the Creditors' Trustee by the holder of the Class 9 or 10 Claim to whom the check originally was issued. Any claim in respect of such  voided check shall be made on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check.

7.4    Returned Checks.  If a distribution made by the Reorganized Debtors or the Creditors' Trustee is returned as undeliverable or is not negotiated within 90 days of issuance and (a) no notice of new address is delivered to the Reorganized Debtors or the Creditors' Trustee, as applicable, within 60 days after the date the distribution was made (if the distribution was returned as undeliverable) or (b) no request for reissuance of the check was made within 90 days after the date of distribution (if a distribution has not been timely negotiated) then the

-31-

distribution so returned or not negotiated shall become the property of the Creditors' Trust or the

Reorganized Debtors, as applicable, and no further distributions on account of the Allowed

Claim for which the distribution was made shall be made and all liability to make any such

replacement or distribution shall end and the Allowed claim, or portion thereof, shall be deemed

fully satisfied.

    7.5  <u>Professional Fees and Administrative Expenses</u>.  Notwithstanding § 503(a)

of the Bankruptcy Code, each Professional Person or firm retained with approval by order of the

Bankruptcy Court or requesting compensation in the Chapter 11 Cases pursuant to §§ 330 or

503(b) of the Bankruptcy Code, or any person seeking payment of an asserted Administrative

Expense Claim, shall be required to file an application for the allowance of final compensation,

reimbursement of expenses, or for payment of any Administrative Expense Claim in the Chapter

11 Cases incurred through the Effective Date on or before sixty (60) days after the Effective Date

and any such claim not filed by that date shall be forever barred and discharged. Notwithstanding

section 2.1 of the Plan, objections to any such application shall be filed within twenty (20) days

after such application is filed. The Reorganized Debtors shall make payments to the holders of

Allowed Administrative Expense Claims of Professional Persons within thirty (30) days of the

date such Claim is Allowed by a Final Order.

    7.6  <u>Transactions on Business Days</u>.  If the Effective Date or any other date on

which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the

transactions contemplated by the Plan to occur on such day shall instead occur on the next

succeeding Business Day.

## ARTICLE VIII

### Procedures For Resolving And Treating
### Disputed Claims And Interests

8.1    <u>No Distribution Pending Allowance</u>.  Notwithstanding any other provision of the Plan, no cash or other property shall be distributed under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim. Notwithstanding the foregoing, in the event a Priority Tax Claim is disputed, the Reorganized Debtors shall commence distributions on account of any part of such Priority Tax Claim that is not subject to dispute.

8.2    <u>Right to Review Debtors' Schedules and Object to Claims</u>.  On the Effective Date, the Reorganized Debtors, with the assistance of the Creditors' Trustee, shall have the right, duty and obligation to review the Debtors' Schedules and any Claims filed in these Chapter 11 Cases and to object to any such Claims, if the Reorganized Debtors, in consultation with the Creditors' Trustee, believe that there is an appropriate basis to object to such Claims. Subject to further extension by the Bankruptcy Court, the Reorganized Debtors, with the assistance of the Creditors' Trustee, shall be required to file such objections to Claims on or before the Claim Objection Deadline.  The Creditors' Trustee shall only have standing to pursue and settle any unresolved objections to Class 9 and 10 Claims and to object to any Class 9 and 10 Claim to which the Reorganized Debtors do not file objections on or before the Claims Objection Deadline.  All objections shall be litigated to a Final Order except to the extent the Reorganized Debtors or the Creditors' Trustee elect to withdraw any such objection, elect to compromise, settle, or otherwise resolve any such objection, in which event the Reorganized Debtors or the Creditors' Trustee may settle, compromise, or otherwise resolve the objections to such Disputed

Claims without the approval or order of the Bankruptcy Court provided the Effective Date has occurred.

        8.3    <u>Estimation</u>.  The Debtors may request that the Bankruptcy Court estimate any Disputed Claim, pursuant to § 502(c) of the Bankruptcy Code for purposes of voting on the Plan.  On and after the Confirmation Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved by the Debtors, the Reorganized Debtors, or the Creditors' Trustee without approval by the Bankruptcy Court.

## **ARTICLE IX**

<u>Treatment Of Executory
Contracts And Unexpired Leases</u>

        9.1    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  On the Confirmation Date, but subject to the occurrence of the Effective Date, pursuant to § 365 of the Bankruptcy Code, all of the Debtors' executory contracts and unexpired leases shall be deemed rejected except those that: (i) are the subject of motions to assume or reject pending on the Confirmation Date; (ii) were assumed or rejected before the Confirmation Date; (iii) are designated specifically as a contract or lease to be assumed on the Schedule of Assumed Contracts and Leases contained in the Plan Supplement (which Schedule of Assumed Contracts and Leases shall be served upon the non-Debtor parties to the Assumed Contracts and Leases), as such Schedule of Assumed Contracts and Leases may be amended on written notice to affected parties from time to time prior to the Confirmation Date to delete unexpired leases or executory contracts therefrom or to add additional contracts and leases thereto.

        9.2    <u>Approval of Rejection of Executory Contracts and Unexpired Leases</u>. Entry of the Confirmation Order shall constitute the rejection, pursuant to § 365(a) of the

Bankruptcy Code, of the executory contracts and unexpired leases rejected pursuant to Section 9.1 of the Plan.

9.3    Effect of Rejection.  The entry by the Bankruptcy Court of an order authorizing the rejection of an executory contract or unexpired lease shall result in such rejection being a prepetition breach under §§ 365(g) and 502(g) of the Bankruptcy Code.

9.4    Deadline to File Rejection Damage Claims.  Each Person who is a party to a contract or lease rejected under the Plan must file with the Bankruptcy Court and serve on the Debtors' or Reorganized Debtors' attorneys, not later than twenty (20) days after the later of (a) the Confirmation Date or (b) the rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults, a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in distributions under the Plan, related to such alleged rejection damages.

9.5    Assumption of Executory Contracts and Unexpired Leases.  Annexed to the Plan Supplement is the Schedule of Assumed Contracts and Leases deemed to be assumed by the Debtors under the Plan as of the Confirmation Date (but subject to the occurrence of the Effective Date) pursuant to § 365 of the Bankruptcy Code, the cure amounts necessary for such assumptions, and the proposed payment terms for such cure amounts.

9.6    Approval of Assumption of Executory Contracts and Unexpired Leases. Subject to the cure and rejection procedures set forth herein, entry of the Confirmation Order shall constitute assumption pursuant to § 365(a) of the Bankruptcy Code, of the executory contracts and unexpired leases listed on the Schedule of Assumed Contracts and Leases.

9.7    Cure Procedures.  At the election of the Reorganized Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under the

-35-

Plan shall be satisfied pursuant to § 365(b)(1) of the Bankruptcy Code, (a) pursuant to the payment terms set forth on the Schedule of Assumed Contracts and Leases, or (b) on such other terms as may be agreed to by the parties to such executory contract or unexpired lease and the Reorganized Debtors. If a dispute occurs regarding: (i) the cure amount; (ii) the payment terms for such cure amounts; (iii) the ability of the Debtors to provide adequate assurance of future performance under the contract or lease to be assumed; or (iv) any other matter pertaining to assumption, then the cure payments required by § 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.

        9.8    <u>Deadline to Object to Cure Amounts</u>.  Any party to an executory contract or unexpired lease listed on the Schedule of Assumed Contracts and Leases that disputes (i) the cure amount; (ii) the payment terms for such cure amounts; (iii) the ability of the Debtors to provide adequate assurance of future performance under the contract or lease to be assumed; or (iv) any other matter pertaining to assumption, must file with the Bankruptcy Court and serve upon the attorneys for the Debtors or the Reorganized Debtors, a response in writing specifically stating the nature of the objection and all facts that support such objection on or before three (3) days prior to the hearing on confirmation of the Plan.  In the event a party to such an executory contract or unexpired lease fails to file with the Bankruptcy Court an objection to the applicable cure amount and payment terms for such cure amounts set forth on the Schedule of Assumed Contracts and Leases, by the above deadline, then such party shall be forever barred from asserting any additional or other amounts against the Debtors respecting such cure amount.

        9.9    <u>Amendment of the Schedule of Assumed Contracts</u>.  The Debtors reserve their right, at any time prior to the Confirmation Date and on written notice to affected parties, to amend the Schedule of Assumed Contracts and Leases prior to the Confirmation Date to delete

unexpired leases or executory contracts therefrom or to add additional contracts and agreements thereto, and to alter the amounts and terms of cure payments.

## ARTICLE X

### Effectiveness Of The Plan

10.1    Conditions Precedent to the Effective Date.  The following are conditions precedent to the Effective Date of the Plan:

(a)    The Bankruptcy Court shall have entered an order confirming the Plan in form and substance satisfactory to the Debtors;

(b)    All documents, instruments and agreements in form and substance satisfactory to the Debtors, provided for under or necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby;

(c)    Not less than ten (10) days have elapsed since the date the order confirming the Plan was entered by the Bankruptcy Court unless otherwise shortened by the Bankruptcy Court so that the Confirmation Order becomes a final order upon entry;

(d)    The Plan Sale has occurred pursuant to the Confirmation Order and the proceeds have been deposited with the Debtors;

(e)    The Creditors' Trust Payment is made to the Unsecured Creditors' Trust; and

(f)    The New Equity Contribution has been funded.

10.2    Waiver of Conditions Precedent to the Effective Date.  If any of the conditions precedent to the Effective Date set forth in Section 10.1 above has not been satisfied, the Debtors may waive any such condition other than the condition set forth in Section 10.1(a).

-37-

10.3    <u>Notice of the Effective Date</u>.  Within five (5) Business Days of the Effective Date, the Reorganized Debtors shall serve a notice on all creditors of the occurrence of the Effective Date, and file a copy with the Bankruptcy Court.

## **ARTICLE XI**

### Effect Of Confirmation

11.1    <u>Jurisdiction</u>.  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtors and the Estates' assets. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XII of the Plan.

11.2    <u>Revesting of Assets</u>.  Except as otherwise provided in the Plan, upon the Effective Date, the Debtors assets shall vest in the Reorganized Debtors free and clear of all liens, Claims or encumbrances as set forth in Section 5.3 of the Plan.

11.3    <u>Binding Effect</u>.  Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interests in, the Debtors, their respective successors and assigns, whether or not the Claim or Interest of such a holder is impaired under the Plan and whether or not such holder has accepted the Plan.

11.4    <u>Injunction</u>.  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to § 105 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all obligations of the Debtors and the Reorganized Debtors under the Plan have been performed and the Chapter 11 Cases have been closed.

11.5    <u>Discharge</u>.  Except as otherwise provided in the Plan or the Confirmation Order, effective on the Confirmation Date, the Plan shall discharge and terminate all liability for

any debt of, or Claim against, the Debtors that arose before the Effective Date, and any debt or claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not:

(a)    a proof of claim based on such debt or Claim was filed, or deemed filed, under § 501 of the Bankruptcy Code;

(b)    such Claims are Allowed or Disallowed under § 502 of the Bankruptcy Code;

(c)    such Claim was properly scheduled, if such claim holder had notice of these Chapter 11 Cases before the Confirmation Date; or

(d)    the holder of such Claim has accepted or rejected the Plan.

11.6    <u>Exculpation</u>.  The Debtors and their respective officers, directors, managers, members, shareholders, employees, agents, and professionals shall neither have nor incur any liability to any person or entity for any prepetition or post petition act take, or omitted to be taken, in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any contract, instrument, release or any other agreement or document created, or entered into, in connection with the Plan, or any other prepetition or post petition act taken, or omitted to be taken, in connection with, or in contemplation of the Debtors' restructuring in the Chapter 11 Cases.

## **ARTICLE XII**

### Retention Of Jurisdiction

12.1    <u>Exclusive Jurisdiction of the Bankruptcy Court</u>.  The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

-39-

(a)    To hear and determine any motions for the assumption or rejection of executory contracts or unexpired leases, and the allowance of any Rejection Claims resulting therefrom;

(b)    To determine any and all pending adversary proceedings, applications, and contested matters;

(c)    To hear and determine any objection to any Claim;

(d)    To enter and implement such orders as may be appropriate in the event the confirmation order is for any reason stayed, revoked, modified, or vacated;

(e)    To issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(f)    To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under §§ 330, 331, and 503(b) of the Bankruptcy Code;

(h)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(i)    To recover all assets of the Debtors and property of the Estates, wherever located;

(j)    To hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under § 505(b) of the Bankruptcy Code filed, or to be filed, with

-40-

respect to tax returns for any and all taxable periods ending after the Petition Date through, and

including, the entry of final decrees closing the Chapter 11 Cases);

(k)     To hear any other matter consistent with the provisions of the Bankruptcy

Code; and

(l)     To enter final decrees closing the Chapter 11 Cases.

## ARTICLE XIII

### Acceptance Or Rejection Of The Plan

13.1    Voting of Claims.  Each holder of an Allowed Claim or Interest in an

impaired Class of Claims shall be entitled to vote to accept or reject the Plan.

13.2    Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the

Bankruptcy Code and except as provided for in § 1126(e) of the Bankruptcy Code, a Class of

creditors shall have accepted the Plan if it is accepted by at least two-thirds in amount and more

than one-half in number of the holders of Allowed Claims or Interests of such Class that have

timely and properly voted to accept or reject the Plan.

13.3    Confirmation over the Rejection of an Impaired Class.  The Debtors will

seek confirmation of the Plan over the rejecting vote of any impaired Class of Claims.

## ARTICLE XIV

### Miscellaneous Provisions

14.1    Effectuating Documents and Further Transactions.  The Debtors or

Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts,

instruments, releases and other agreements or documents and take such actions on behalf of the

Debtors or Reorganized Debtors as may be necessary or appropriate to effectuate and further

evidence the terms and conditions of the Plan, without any further action by or approval of the

governing members or managers of the Debtors. Any transfer from the Debtors pursuant to the

-41-

Plan will not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Bankruptcy Code.

      14.2   <u>Payment of Statutory Fees</u>.  All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. All post-confirmation statutory fees assessed on and after the Effective Date shall be assessed based on the Debtors' estates and not the Reorganized Debtors operations, and shall be paid by the Creditors' Trustee until the Chapter 11 Cases are closed.

      14.3   <u>Modification of the Plan</u>.  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of an Allowed Claim or Interest that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

      14.4   <u>Withdrawal or Revocation</u>.  The Debtors may withdraw or revoke the Plan at any time prior to the Effective Date. If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Effective Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

BDDB01 6179730v11

14.5    <u>Termination of the Committee.</u>  The Committee shall cease to exist after the Effective Date and the creation of the Creditors' Trust.

14.6    <u>Courts of Competent Jurisdiction.</u>  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of justification shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

14.7    <u>Notices.</u>  Any notices to or requests of the Debtors or Reorganized Debtors by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

| The Debtors: | Summit Trucking LLC |
| | Attention:  David L. Summitt |
| | 1800 Progress Way |
| | Clarksville, IN 47129 |
| With a copy to: | Baker & Daniels LLP |
| | Attention:  Terry E. Hall |
| | 300 North Meridian Street, Suite 2700 |
| | Indianapolis, IN  46204 |

14.8    <u>Severability.</u>  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors or the Reorganized Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered

BDDB01 6179730v11

or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.9    <u>Governing Law.</u>  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the state of Indiana, without giving effect to the principles of the conflicts of laws thereof.

14.10    <u>Headings.</u>  Headings used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

Dated: September 10, 2011        SUMMITT LOGISTICS & BROKERAGE, LLC

By: Summitt Holdings, LLC, sole member

By:/s/ David L. Summitt, managing member

SUMMITT TRUCKING, LLC

By: Summitt Holdings, LLC, sole member

By:/s/ David L. Summitt, managing member

TRACTOR LEASING, LLC
By: Summitt Holdings, LLC, sole member

By:/s/ David L. Summitt, managing member

TRAILER LEASING, LLC

By: Summitt Holdings, LLC, sole member

By:/s/ David L. Summitt, managing member

BAKER & DANIELS LLP

James M. Carr (#3128-49)
Terry E. Hall (#22041-49)
Baker & Daniels LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Attorneys for the Debtors

-45-

BDDB01 6179730v11