UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Summitt Logistics & Brokerage, LLC, et al.,**[1] | ) | Case No. 09-90630-BHL-11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE DISCLOSURE STATEMENT TO DEBTORS'
CONSOLIDATED PLAN OF REORGANIZATION (DOC. NO. 988)**

The Official Committee of Unsecured Creditors of Summitt Logistics & Brokerage, LLC, *et al*. (the "Committee"), by its counsel, FROST BROWN TODD LLC, files this Objection (the "Objection")[2] of the Official Committee of Unsecured Creditors to the Disclosure Statement (the "Disclosure Statement") to Debtors' Consolidated Plan of Reorganization (the "Consolidated Plan").[3]  The Disclosure Statement fails to provide creditors in this Chapter 11 Case with the necessary, rudimentary, and material information to be able to make an informed judgment about the feasibility of the Consolidated Plan and their own potential return under that Consolidated Plan.  Until this information is supplied by the Debtors to the Committee, creditors and this Court – and the Committee is given an adequate period within which to analyze such additional materials – this Court should not approve the Disclosure Statement.  In support, the Committee respectfully states:

---

[1] The Debtor entities are Summitt Logistics & Brokerage, LLC, Summitt Trucking, LLC, Tractor Leasing, LLC, and Trailer Leasing, LLC.

[2] The Committee will also be filing its Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion to Substantively Consolidate the Estates for Purposes of the Joint Consolidated Plan (the "Consolidation Motion Objection"), which is incorporated by reference as if fully restated herein.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Consolidated Plan and Disclosure Statement.

## I. FACTUAL BACKGROUND RELEVANT TO THE COMMITTEE'S OBJECTION

1. On March 2, 2009 (the "Petition Date"), the Debtors commenced theses Chapter 11 Cases, creating the Debtors' Estates. They have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, but the Committee has been appointed in these Chapter 11 Cases.

2. On September 10, 2011, the Debtors filed the Disclosure Statement (Doc. No. 988) and Consolidated Plan (Doc. No. 989). A hearing to consider approval of the Disclosure Statement has been scheduled for November 10, 2011 (Doc. No. 998).

3. The Disclosure Statement provides that the projected gross claim pool for Class 10 (General Unsecured Claims) totals $1,100,000.00. (Disclosure Statement, Art. VI). The projected gross claim pool for Class 9 (Deficiency Claims) is $14,500,000.00. (Disclosure Statement, Article VI). Under the proposed Consolidated Plan, Class 10 general unsecured creditors are impaired, and in full and complete satisfaction, discharge and release of their Allowed Class 10 Claims, will share in *pari passu* with the holders of Allowed Class 9 Claims and receive their Pro Rata share of their beneficial interests in the Creditors' Trust. (Disclosure Statement, Art.VII, D, 2 (i)).

4. On the Effective Date, the Creditors' Trust will be created to facilitate distributions to holders of Allowed Class 9 and 10 Claims. (Disclosure Statement, Art.VII, E, 1). The Creditors' Trust will be funded by the New Equity Contribution of $25,000.00 and $50,000.00 in cash from the operating funds of the Reorganized Debtors. (Disclosure Statement, Art.VII, E, 1; Consolidated Plan, § 1.44). Continued funding of the Creditors' Trust will come from the assigned Avoidance Actions that have not been

waived, released or otherwise settled. (Disclosure Statement, Art.VII, E, 1). The Disclosure Statement does not set forth the estimated recoveries from Avoidance Actions. The Debtors simply state that "the prosecution of Avoidance Actions [or the net value of the claim being waived] **may, or may not** result in distributions to holders of Allowed Class 9 and 10 Claims." (Disclosure Statement, Art.VII, E, 1).

5. Based on the information contained in the Disclosure Statement, Class 10 creditors are unable to determine the potential distributions they will receive under the Consolidated Plan. Absent information concerning the estimated value of Avoidance Action recoveries, Class 9 and Class 10 general unsecured creditors can only assume that the Creditors' Trust will distribute $75,000.00 on claims estimated at $15,600,000.00, for a recovery on Allowed Class 9 and 10 Claims of significantly less than one percent, if at all.

6. Meanwhile, the Debtors' insiders and pre-petition equity interest holders, David L. Summitt (hereinafter, "Summitt") and Jesse Ballew (hereinafter, "Ballew"),[4] will obtain the equity in the Reorganized Debtors for a cash infusion of only $25,000.00 in the form of the New Equity Contribution to the Creditors' Trust, and will also receive releases from Avoidance Action prosecution for themselves and their affiliated non-debtor entities, Summitt Holdings, LLC, Silver Creek, LLC, and Stock Investments, LLC, and Summitt will maintain his current management position with the Reorganized Debtors. (Disclosure Statement, Art. IV, A; Consolidated Plan, §§ 1.4, 1.44, 1.45, 1.57). However, Summitt's compensation, as well as the compensation of any of the Debtors'

---

[4] There appears to be a discrepancy between the definition of New Equity Holders in the Consolidated Plan, defined as Summitt and Ballew, and the owners of the Reorganized Debtors post-emergence, Summitt and Stock Investments, LLC, identified in the Term Sheet attached as Exhibit 2 to the Disclosure Statement.

3

Insiders who will remain in management or employment positions is not disclosed. (Disclosure Statement, Art. X, A).

7.  Moreover, as set forth in detail below, the Disclosure Statement fails to provide creditors with adequate information concerning the various aspects of the Consolidated Plan that would enable a hypothetical reasonable investor to make an informed judgment concerning the feasibility of the Consolidated Plan, and the Disclosure Statement cannot be approved.

## II. THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION.

### A. The Governing Legal Standard.

8.  Disclosure is "the pivotal concept in reorganization of a Chapter 11 Debtor." *In re Krystal Cadillac-Oldsmobile GMC v. General Motor Corp.*, 337 F.3d 314 (3rd Cir. 2003) (citations omitted). The purpose of section 1125 of the Bankruptcy Code is to "provide holders of claims and interests with 'adequate information' prior to the acceptance or rejection of a reorganizational plan, in order for them to be able to make *an informed judgment as to the feasibility of the plan*." *In re Microwave Prods. of America, Inc.*, 100 B.R. 376, 377 (Bankr. W.D. Tenn. 1989) (emphasis added). Accordingly, the information to be provided in a disclosure statement "should be comprised of all factors presently known to the plan proponent that bear upon the success or failure of proposals contained in the plan." *Id*. (citing *In re Stanley Hotel, Inc.*, 13 B.R. 926 (Bankr. D. Col. 1981)). While the Bankruptcy Code does not precisely define "adequate information," a disclosure statement must contain enough information to comport with the purpose of

4

requiring a disclosure statement.[5]  Importantly, a disclosure statement must "clearly and succinctly inform the average unsecured creditor what it will get, when it will get it, and what contingencies there are to getting a distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

9.  Case law has developed certain criteria for evaluating the sufficiency or adequacy of disclosure statements.[6]  Courts consider what constitutes adequate

---

[5]  Section 1125(a) of the Bankruptcy Code defines "adequate information" as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125(a).

[6] These generally accepted criteria are:

(a)  the circumstances that gave rise to the filing of the bankruptcy petition;
(b)  a complete description of the available assets and their value;
(c)  the anticipated future of the debtor;
(d)  the source of the information provided in the disclosure statement;
(e)  a disclaimer;
(f)  the condition and performance of the debtor while in Chapter 11;
(g)  information regarding claims against the estate;
(h)  a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;
(i)  the accounting and valuation methods used to produce the financial information in the disclosure statement;
(j)  information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;
(k)  a summary of the plan of reorganization;
(l)  an estimate of all administrative expenses, including attorneys' and accountants' fees;
(m)  the collectability of accounts receivable;
(n)  financial information, valuations and *pro forma* projections that are relevant to creditors' determinations of whether to accept or reject the plan;
(o)  information relevant to the risks posed to creditors under the plan;
(p)  the actual or projected value that can be obtained from recovery of avoidable transfers;
(q)  the existence, likelihood and possible success of non-bankruptcy litigation;
(r)   the tax consequences of the plan; and
(s)  the relationship of the debtor with affiliates.

5

information on a case-by-case basis. *Scioto Valley*, 88 B.R. at 170 (citations omitted). Although the list of criteria to consider whether or not a disclosure statement provides adequate information is neither exhaustive nor necessary in all cases, it provides a useful framework for courts in examining the adequacy of information contained in a disclosure statement. *Id*.

10. As discussed below, the Disclosure Statement fails to satisfy several of the foregoing requirements and the Consolidated Plan cannot be confirmed. Consequently, the Disclosure Statement should not be approved by this Court at this time.

**B.     The Disclosure Statement Does Not Contain Adequate Information Regarding the Treatment of Class 9 and 10 Claims**.

11. The Disclosure Statement does not provide Class 9 and 10 creditors with adequate information from which to determine their treatment under the Consolidated Plan. Because the Disclosure Statement fails to address the estimated value of recoveries on Avoidance Actions or the costs associated with pursuing such actions or administering the Creditors' Trust, holders of Allowed Class 9 and 10 Claims are unable to calculate their estimated pro-rata share of the Creditors' Trust distributions or to determine if, in fact, distributions from the Creditors' Trust will be made. There is not even disclosure of the gross amount of the Avoidance Action Claims. In addition, such creditors will not know the present value of such estimated pay-outs. The Disclosure Statement must be amended by the Debtors to at least provide a good faith estimate of the distributions to be made by the Creditors' Trust so that Class 9 and 10 creditors will be able to determine the present value of what they would receive under the Consolidated Plan.

---

*In re Cardinal Congregate I,* 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) (citing *In re Scioto Valley Mortgage Co.,* 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988)); *See also Ferretti*, 128 B.R. at 18-19; *In re*

6

      **C.**      **The Disclosure Statement Fails to Adequately Describe the Projected Value That Can be Obtained from Causes of Action and/or Avoidance Action Recoveries.**

12.      Similarly, the fact that the Disclosure Statement fails to provide the actual or projected value that can be obtained from recoveries of Causes of Action and/or Avoidance Actions renders the Disclosure Statement unable to be approved.

      **D.**      **The Disclosure Statement Fails to Adequately Describe the Assets and Liabilities of the Debtors.**

13.      Although the Disclosure Statement includes a statement of the Debtors' consolidated and remaining assets and liabilities (Doc. No. 988, Ex. 3), the Committee understands that the Debtors intend to update this financial information, such that the Debtors' current statement of assets and liabilities may not be accurate and cannot reasonably be relied upon by creditors. In addition, the Disclosure Statement fails to provide a balance sheet and up-to-date income statement.

14.      The Consolidated Plan hinges upon the substantive consolidation of the Debtors' Estates. However, as will be set forth in the Committee's Consolidation Motion Objection, it is far from clear that substantive consolidation is appropriate in these chapter 11 cases. In order for creditors to make an informed decision about the Disclosure Statement that combines the Estates' assets for distribution purposes, the Debtors should also be required to disclose the separate assets and liabilities of each Estate so that creditors can determine whether or not substantive consolidation will have a positive or negative impact on their distributions.

15.      At this time, the Disclosure Statement fails to adequately disclose the Debtors' financial position and, absent this additional information, creditors are unable to

---

*Dakota Rail, Inc.,* 104 B.R. 138, 142-43 (Bankr. D. Minn. 1989).

7

evaluate the feasibility of the Consolidated Plan to make "an informed judgment about the plan."

        **E.**    **The Disclosure Statement Fails to Adequately Describe the Debtors' Assets.**

16.    The Disclosure Statement must contain a complete description of the Debtors' available assets and their value. *Cardinal Congregate I,* 121 B.R. at 765. While Exhibit 3 to the Disclosure Statement includes what appears to be a list of all of the Debtors' consolidated and remaining assets, notably, the line item for potential recoveries from the pursuit of Avoidance Actions remains blank, there is no exhibit containing the documentation or details concerning the Plan Sale[7] upon which a substantial portion of the implementation of the Consolidated Plan is predicated, there is no description of the value of the possible Insider and Related Lenders claims that are being released under the Consolidated Plan, and the Disclosure Statement does not adequately explain the value and collectability of the assets and/or the basis for the differences between the forced and orderly liquidation values listed on Exhibit 3.

17.    The Committee submits that the Debtors' disclosures regarding the value of their assets are confusing and, at best, incomplete. Creditors are simply unable to compare what they may receive under the Consolidated Plan with a distribution in a liquidation absent adequate information about the Debtors' assets. The Disclosure Statement should be amended by the Debtors and cannot be approved by this Court at this time.

---

[7] Although a Term Sheet for the Plan Sale is attached as Exhibit 2 to the Disclosure Statement, Attachments A, B, C and D to the Term Sheet are not attached.

8

F. **The Disclosure Statement Fails to Provide Adequate Information Regarding Future Management of the Debtors, Including Their Compensation.**

18.    The Disclosure Statement must identify the future management of the Debtors, including their qualifications and compensation. *Cardinal Congregate,* 121 B.R. at 765.  Section 1129(a)(5)(A)(I) of the Bankruptcy Code likewise requires that the plan proponent disclose the identity and affiliations of any individual proposed to serve as a director/manager, officer or voting trustee of a debtor, and affiliate of a debtor participating in a plan with the debtor, or a successor to a debtor.  Although the Disclosure Statement provides that "there will be no material changes in the management of the Reorganized Debtors," it does not adequately identify who will remain in what positions or the amount of their compensation.  Noticeably absent is a disclosure of whether the current Insiders of the Debtors will continue to be employees or managers of the Debtors.   Once again, until the Debtors amend the Disclosure Statement and provide the Committee, creditors and this Court with an opportunity to examine whether the Disclosure Statement adequately describes management's qualifications and compensation, no projections of the Debtors can be reasonably assessed by the Committee, creditors, or this Court.  As a result, the Disclosure Statement cannot be approved.

G. **The Disclosure Statement Fails to Adequately Describe Relationships with Insiders and Affiliates.**

19.    The Disclosure Statement must describe the Debtors' post-confirmation relationship with its affiliates and Insiders. *Cardinal Congregate I*, 121 B.R. at 765. Beyond its disclosure that Summitt will continue to manage the Reorganized Debtors, the Disclosure Statement contains no discussion of (and does not attach or describe) any

9

ancillary agreements that may exist between the Debtors and the Debtors' Insider(s) and affiliates, beyond the Term Sheet. In addition, the Consolidated Plan and Disclosure Statement provide that the membership interests currently held by the Debtors' equity interest holders will be cancelled and reissued directly to Messrs. Summitt and Ballew for a payment to the Creditors' Trust of only $25,000.00. The Disclosure Statement does not, however, establish or even discuss whether the consideration to be paid is adequate in light of the value of the assets of the Debtors. Until the Committee, creditors and this Court are given a better understanding of the Debtors' proposed relationship with its Insiders and affiliates, this Court should withhold approval of the Disclosure Statement.

**H.     The Disclosure Statement Does Not Contain Adequate Projections.**

20.     While the Debtors' cash flow projections supporting the Consolidated Plan are attached as Exhibit 4 to the Disclosure Statement, the Committee understands that these projections contain inaccuracies and that the Debtors intend to provide updated projections. Additionally, the Disclosure Statement does not attach or include a description of the leases and the accounts receivable financing agreement that form the basis of the Plan Sale, upon which certain of the Debtors' cash flow projections are based. (*See* Disclosure Statement, Exhibit 2).

21.     In the Disclosure Statement, the Debtors rely heavily on alleged benefits being conferred upon creditors by the Debtors' continued existence in lieu of cash payments to Class 9 and 10 Creditors, either upon the Effective Date or over time. However, without a basic understanding of the Debtors' post-Effective Date relationships with parties such as their new exit lender, creditors are unable to ascertain whether any benefits are meaningful.

22.     A disclosure statement must contain financial information, valuations and pro forma projections that are relevant to a creditor's determination of whether to accept or reject a plan of reorganization. *Cardinal Congregate I*, 121 B.R. at 765. Delivery of adequate projections is not a mere technicality. The Debtors' projections are critical because they are the only evidence available to the Committee, creditors and this Court of the ability to pay the amounts due to creditors under the Consolidated Plan. The projections also are the primary way for the Committee, creditors and this Court to assess the Consolidated Plan's feasibility, which is clearly an appropriate topic of disclosure in the Disclosure Statement.

23.     Section 1129 of the Bankruptcy Code requires that a debtor's plan of reorganization be feasible. To evaluate the feasibility of a plan of reorganization, a court should analyze concrete and reliable data, such as market conditions, adequacy of the debtor's capital, the debtor's ability to generate cash flow and other factors pertinent to the debtor's business operations. *See In re Repurchase Corp.*, 332 B.R. 336 (Bankr. N.D. Ill. 2005); *In re Apex Pharms.*, 203 B.R. 432 (Bankr. N.D. Ind. 1996); *Hall v. Vance*, 887 F.2d 1041, 1043 (10th Cir. 1989) (disclosure statement failed to provide adequate information when it did not provide creditors with cash requirements needed by debtor to operate and maintain property); *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985) (court should assess debtor's financial ability to satisfy payments under its plan in a practical and realistic manner); *In re Olive Street Investments, Inc.*, 117 B.R. 488, 491 (Bankr. E.D. Mo. 1990) (disclosure statement inadequate where it fails to identify administrative expenses which must be satisfied); *In re 222 Liberty Assoc.,* 108 B.R. 971, 986 (Bankr. E.D. Pa. 1990) (court should focus on the specific terms of the plan in order to determine

its plausibilty); *In re L&M Properties, Inc.,* 102 B.R. 481, 484-485 (Bankr. E.D. Va. 1989) (reorganization unlikely where debtor failed to present credible financial forecast). Unless and until an updated and accurate Exhibit 2, with all relevant reference documents or a description of the same, and Exhibit 4 are filed and served on all necessary parties in interest, this Court should not approve the Disclosure Statement.

**I.     The Disclosure Statement Does Not Contain Adequate Information Regarding Other Risks Posed to Creditors Under the Consolidated Plan.**

24.    The Disclosure Statement must disclose information relevant to the risks posed to creditors under the Consolidated Plan. *Cardinal Congregate I*, 121 B.R. at 765. The Disclosure Statement fails to adequately disclose the risks to creditors if they vote to accept the Consolidated Plan. Given the numerous deficiencies in the Disclosure Statement, it is impossible for creditors to assess whether the Disclosure Statement reveals all of the risks to creditors posed by the Consolidated Plan. Consequently, the Disclosure Statement cannot be approved by this Court.

**J.     The Disclosure Statement Fails to Adequately Describe Certain Releases the Debtors Seek to Obtain through the Confirmation of the Consolidated Plan and the Basis for Such Releases.**

25.    The Disclosure Statement must disclose information of a kind and in sufficient detail to enable a hypothetical reasonable investor to make an informed judgment about a plan. 11 U.S.C. § 1125(a). The approval of any releases, compromises or settlements which would otherwise require Court approval should be disclosed in detail. The Disclosure Statement fails to adequately disclose the releases being given to non-debtor persons and entities. The Seventh Circuit has held that a bankruptcy court may "release third parties from liability to participating creditors if the release is

12

'appropriate' and not inconsistent with any provision of the [B]ankruptcy [C]ode." *Airadigm Communs., Inc. v. FCC (In re Airadigm Communs., Inc.),* 519 F.3d 640, 657 (7th Cir. 2008); s*ee also In re Ingersoll Inc.*, 562 F.3d 856, 864 (7th Cir. 2009). However, whether the release is "appropriate" is fact intensive and depends on the nature of the reorganization. *Airadigm,* 519 F.3d at 657. The release must be narrow and apply only to claims "arising out of or in connection with" the reorganization and should not include "willful misconduct." *Id.* (internal quotation omitted). Moreover, a release may not provide for "blanket immunity." *Id.* The immunity afforded by a release must not affect matters beyond the jurisdiction of the court or unrelated to the reorganization. *Id.* "A nondebtor release should only be approved in 'rare cases' . . . because it is 'a device that lends itself to abuse.'" *Ingersoll,* 562 F.3d at 865 (*quoting In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 141, 142 (2d Cir. 2005)).[8]

26.     Under the Consolidated Plan, any and all Avoidance Actions against Summitt, Ballew, their affiliated non-debtor entities, Summitt Holdings, LLC, Silver Creek, LLC, and Stock Investments, LLC, are being released. (Disclosure Statement, Art. IV, A; Consolidated Plan, §§ 1.4, 1.44, 1.45, 1.57). The Disclosure Statement fails to adequately identify what claims non-debtors are being released from, the value of the potential claims being released, or cite to the circumstances which could possibly warrant the release of non-debtors under this Consolidated Plan. These releases must be

---

[8] The *Metromedia* court required that a nondebtor, in order to be released by a plan of reorganization, must make a substantial contribution to the estate. *Id*. at 142. Courts are wary of substantial contributions to the estate that are predicated on releases. *In re Karta Corp*., 324 B.R. 45 (S.D.N.Y. 2006) (stating that "[a]nyone can devise a plan that involves contributions from non-debtors who (not surprisingly) would condition their participation on being shielded from *their* creditors. And just as every family is unhappy in its own way, every multi-debtor corporate bankruptcy can come up with some aspect of its situation that seems to it, and to its creditors, to be 'unique.' So it would be all too easy to bring many cases in under what the Second Circuit has said should be the very small *Metromedia* umbrella—which would make a plan fact that is supposed to be an exception swallow the rule against non-debtor releases.").

13

adequately disclosed and scrutinized for their appropriateness in the Consolidated Plan for a hypothetical investor to be able to make an informed decision.

> **K.   The Debtors' Disclosure Statement Fails to Adequately Identify Potential Causes of Action and Avoidance Actions.**

27.     While the Committee has not had an opportunity to investigate all potential Causes of Action and Avoidance Actions, with the exception of certain released claims, they are preserved by the Consolidated Plan.  The Disclosure Statement does not contain any specific information concerning the potential defendants in Causes of Action or Avoidance Actions.  Debtors must disclose potential causes of action in a disclosure statement.  *Krystal Cadillac-Oldsmobile*, 337 F.3d at 323.  In *Krystal*, the court held that a debtors' "boilerplate" description of "tort, contract and violation of automatic stay claims" was "not adequate to provide the level of notice a disclosure statement requires." *Id*. at 321.  The court held that the debtor was judicially stopped from pursuing any claims that were not included in the disclosure statement because of the impact nondisclosure has on creditors:  "Such nondisclosures affect creditors' willingness to negotiate their claims and enhance the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is."  *Id*. at 325.  The Disclosure Statement must be amended to list potential defendants to ensure that valuable assets of the Estates are not potentially waived.

> **L.   The Disclosure Statement Fails to Disclose That Certain of the Security Interests Asserted By TAB Are Likely Avoidable Under Section 544(a) of the Bankruptcy Code Or the Impact of Such Avoidance on the Consolidated Plan.**

28.     Article 4.1 of the Consolidated Plan provides for the treatment of the TAB and TAL Secured Claim through the proceeds of the Plan Sale, which includes the sale of certain trailers owned by Trailer Leasing and certain equipment owned by Tractor

14

Leasing. (*See* Disclosure Statement, Exhibit 2). Section 1.64 of the Consolidated Plan specifically identifies the "TAB Collateral" as "the 74 tractors and 422 trailers owned by the Debtors and which secure the Debtors' obligations under the TAB Credit Facilities and DIP Financing Agreement" of both pre- and post-Petition Date obligations, which will be sold for TAB's benefit through the Plan Sale. (*See* Disclosure Statement, Exhibit 2).

29. The Committee has provided notice to the Debtors and TAB of deficiencies with TAB's alleged security interest in certain of the TAB Collateral. These deficiencies could result in determinations that TAB does not have a valid security interest in certain of the TAB Collateral, that its alleged interest is avoidable under section 544 of the Bankruptcy Code and that any payments it has received since the Petition Date on its alleged interest can be recovered, or any of the multitude of consequences that could flow from such determinations, all of which could impact the feasibility of the Consolidated Plan. The Disclosure Statement fails to address, much less provide adequate information concerning, this significant feasibility issue. *See Cardinal Congregate I*, 121 B.R. at 765. Consequently, the Disclosure Statement cannot be approved.

      M.    **The Debtors' Disclosure Statement has Numerous Additional Omissions of Information which Information Necessary to Enable a Hypothetical Creditor to Vote on the Consolidated Plan.**

30. In addition to the foregoing, the Disclosure Statement is fatally defective because the Debtors do not adequately disclose to the Committee, this Court and/their creditors in detail the following information:

15

- The Debtors fail to disclose the source and/or methodology used by the Debtors to determine the value of their assets.
- The Debtors fail to adequately discuss in the Disclosure Statement the tax consequences, if any, of the Consolidated Plan, either on the Debtors, their Insiders, or their creditors.
- The Consolidated Plan is premised upon the substantive consolidation of the Debtors' Estates for plan, but not reorganization, purposes. The Committee has filed its Consolidation Motion Objection, which is incorporated by reference as if fully restated herein, and calls into question the ability of the Debtors to substantively consolidate their Estates, which could render the Disclosure Statement and Consolidated Plan void.

For all of the reasons set forth herein, the Disclosure Statement cannot be approved.

### III. THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE THE DEBTORS' PLAN CANNOT BE CONFIRMED.

31. It is well-settled that a disclosure statement which describes a patently unconfirmable plan should be disapproved for that reason alone. *In re Woodbrook Assocs.*, 19 F.3d 312 (7th Cir. 1999); *In re Cardinal Congregate I*, 121 B.R. at 764; *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) (if plan is facially unconfirmable, "then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation"); *In re Dakota Rail, Inc.*, 104 B.R. at 143 ("Allowing a facially nonconfirmable plan to accompany disclosure statement is both inadequate disclosure and a misrepresentation."); *In re O'Leary*, 183 B.R. 338, 342 (Bankr. D. Mass. 1995) (denying approval of disclosure statement which described unconfirmable plan).

32. The Disclosure Statement not only fails to satisfy the relevant standards of "adequate information." It relates to a plan of reorganization that inherently is not confirmable. Therefore, this Court should enter an order denying approval of the Debtors' Disclosure Statement.[9]

---

[9] The Committee reserves all rights to object to confirmation of the Consolidated Plan if and when the

16

A.  **The Consolidated Plan Fails to Disclose the Identity and Affiliations of Post-Confirmation Management and Their Related Affiliations.**

33.  Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of any individual proposed to serve after confirmation as a director/manager, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor or a successor to the debtor. Other than to state that Summitt will continue to manage the Reorganized Debtors, the Consolidated Plan fails to satisfy 1129(a)(5)(A)(i) of the Bankruptcy Code by its failure to disclose this information.

B.  **The Debtors Cannot Substantively Consolidate Their Estates and the Consolidated Plan Cannot Be Confirmed.**

34.  As will be set forth in detail in the Committee's Consolidation Motion Objection, the Debtors have failed to offer any evidence to support the substantive consolidation of their Estates for plan purposes, and consolidation forms the entire basis for the Consolidated Plan. Substantive consolidation is an extreme, imprecise, "rough justice" remedy. *In re Owens Corning*, 419 F.3d 195, 211 (3rd Cir. 2005). Based solely on the representations made by the Debtors in the Consolidation Motion, Disclosure Statement and Consolidated Plan, substantive consolidation is unwarranted and the Consolidated Plan cannot be confirmed.

C.  **The Consolidated Plan Was Not Proposed In Good Faith.**

35.  The Consolidated Plan also violates Section 1129(a)(3) of the Bankruptcy Code because it was not proposed in good faith. *Bank of America National Trust & Savings Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 453 (1999). The Consolidated Plan's predominant feature is its showering of benefits on the Debtors'

---

Disclosure Statement is approved.

Insiders, including their ability to obtain equity in the Reorganized Debtors for what amounts to a nominal payment to a Creditors' Trust from which Class 9 and Class 10 creditors may receive no distribution. Under the proposed Consolidated Plan, only the secured lenders and Insiders benefit, at the expense of other creditors.

36.  The above-described deficiencies in the Consolidated Plan render it unconfirmable, making the burden and expense of plan distribution and vote solicitation unnecessary and wasteful. Accordingly, this Court should deny approval of the Disclosure Statement.

### IV.  CONCLUSION

Based upon all of the foregoing, the Disclosure Statement, in its current form, cannot be approved for purposes of soliciting acceptances to the Consolidated Plan. The Disclosure Statement fails to provide adequate information in accordance with Section 1125. Instead, it is replete with unsupported generalizations and references that do not assist a hypothetical investor with making an informed judgment about the Consolidated Plan and prohibits the Class 9 and 10 creditors from making an informed decision concerning the Consolidated Plan. Additionally, the Consolidated Plan cannot be confirmed as presented and the Committee does not support the Consolidated Plan in its current form. For these reasons, and in the interests of judicial economy, the Committee requests that each of the defects in the Disclosure Statement and Consolidated Plan be corrected prior to approval of the Disclosure Statement and solicitation of acceptances to the Consolidated Plan. Accordingly, this Court should deny approval of the Disclosure Statement at this time.

WHEREFORE, the Committee respectfully requests that this Court enter an Order:

(a) Denying approval of the Disclosure Statement unless and until the defects in the Disclosure Statement and the Consolidated Plan are corrected;

(b) In the alternative, denying confirmation of the Consolidated Plan as it cannot be approved on its face; and

(c) Granting the Committee such other and further relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

**FROST BROWN TODD LLC**

/s/ Edward M. King.
Edward M. King
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202-3363
(502) 589-5400
tking@fbtlaw.com

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Co-Counsel:
**FROST BROWN TODD LLC**
Ronald E. Gold
Ohio Bar No. 0061351
Paige L. Ellerman
Ohio Bar No. 0071561
Indiana Bar No. 22811-15-A
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202-4182
(513) 651-6800
rgold@fbtlaw.com
pellerman@fbtlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2011 a copy of the foregoing *Objection of the Official Committee of Unsecured Creditors to the Disclosure Statement to Debtors' Consolidated Plan of Reorganization (Doc. No. 988)* was filed electronically and sent through this Court's Electronic Case Filing System. Party/parties may access this filing through the Court's system.

| | |
|---|---|
| **FROST BROWN TODD LLC** <br> 400 W. Market Street, 32nd Floor <br> Louisville, Kentucky 40202-3363 <br> (502) 589-5400 | */s/ Edward M. King, Esq.* <br> **COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |