**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| In re: | : | |
| | : | (Jointly Administered) |
| SUMMITT LOGISTICS & BROKERAGE, LLC, et al., | : | Chapter 11 |
| | : | |
| | : | Case No. 09-90630-BHL-11 |
| Debtors. | : | |
| | | Honorable Basil H. Lorch, III |

**OBJECTION OF CREDITORS TRANSPORTATION ALLIANCE BANK INC., AND TRANSPORTATION ALLIANCE LEASING, LLC, TO ADEQUACY OF DISCLOSURE STATEMENT OF JOINT DEBTORS DATED SEPTEMBER 10, 2011**

Creditors, Transportation Alliance Bank Inc. ("TAB") and Transportation Alliance Leasing, LLC ("TAL") file this limited objection (the "Objection") to the "Disclosure Statement to Debtors' Consolidated Plan of Reorganization" dated September 10, 2011 ("Disclosure Statement") (Dkt. No. 988) and as it incorporates the proposed Plan of Reorganization accompanying the Disclosure Statement also dated September 10, 2011 (the "Plan") (Dkt. No. 989).

**I.**

**STANDARD FOR APPROVAL OF DISCLOSURE STATEMENT**

Section 1125 of the Bankruptcy Code governs the adequacy of and the right to object to a disclosure statement. Any party in interest "may object to the inadequacy of a disclosure statement for the reason that inadequate disclosure may deprive objecting creditors or interest holders of information they may use to persuade others to vote against the plan" and because "all

parties have an interest in good faith and feasibility." 7 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 1125.03 [5], at 1125-23 (15th rev. ed. 2009).

The first level of analysis in deciding whether to approve a disclosure statement under Section 1125 of the Bankruptcy Code is whether the underlying plan of reorganization may itself be confirmed. If the plan cannot possibly be confirmed, then the disclosure statement should not be approved. *See generally, In re Atlanta West VI Ltd. P 'ship*, 91 B.R. 620 (Bankr. N.D. Ga. 1988); *In re Filex, Inc.*, 116 B.R. 37 (Bankr. S.D.N.Y. 1990); *In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987); *In re Pecht*, 53 B.R. 768 (Bankr. E.D. Va. 1985); *In re McCall*, 44 B.R. 242 (Bankr. E.D. Pa. 1984). Approval of a disclosure statement where the plan cannot possibly be confirmed under the requirements of the Bankruptcy Code would necessitate a needless waste of time and estate assets in a fruitless solicitation and confirmation attempt. In such situations, the disclosure statement should not be approved for distribution in the first instance. *See In re Unichem Corp.*, 72 B.R. 95 (Bankr. N.D. Ill. 1987); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973 (Bankr. N.D.N.Y. 1988).

Further, under Section 1125(b) of the Bankruptcy Code, the Court may approve a disclosure statement only if it contains "adequate information." "Adequate information" is defined in Section 1125(a)(1) as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interest in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1) (2011).

The essential purpose of a disclosure statement is to inform the reorganization electorate as fully as possible of the probable financial results of acceptance or rejection of a particular proposed plan. *See, e.g., In re The Stanley Hotel*, 13 B.R. 926, 929-930 (Bankr. D. Colo. 1981) (stating that disclosure must educate the debtor's creditors by "provid[ing] enough information to interested persons so they may make an informed choice between two alternatives [of accepting or rejecting a plan]"); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) (noting that disclosure must provide impaired creditors voting on the plan "the information they need to decide whether to accept the plan"). *See also, Hall v. Vance (In re Hall)*, 887 F.2d 1041, 1043 (10th Cir. 1989) (affirming lower court's decision to disapprove disclosure statement, as it failed to identify assets, liabilities, cash operating requirements, tax consequences, and other material matters). Bankruptcy courts have an independent obligation to determine the existence of adequate information in a disclosure document. *See, In re Eastern Maine Electric Coop., Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991).

Of particular importance here is the requirement that a disclosure statement must contain sufficient information to allow creditors to evaluate independently <u>their</u> proposed treatment under the plan. *See, e.g., In re Civitella*, 15 B.R. 206, 207 (Bankr. E. D. Pa. 1981) (denying approval where voting parties were unable to "independently evaluate the merits of the proponent's plan" because assertions in the disclosure statement that the plan was superior to a forced sale were not accompanied by supporting factual information).

Courts have listed several types of information which should be reflected in evaluating the adequacy of disclosure, and consider whether the disclosure statement contains information such as: (1) the events leading to the petition filing; (2) a description of the available assets and

their value; (3) the present condition of the Debtor; (4) the name of the accountants responsible for providing such information; (5) the collectability of accounts receivable, if applicable, (6) financial information, data, valuations, or projections relevant to the creditors' decision to accept or reject the proposed plan; (7) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; and (8) litigation likely to arise in non-bankruptcy context. *See e.g., In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996).

Thus, in general analysis, the materiality of alleged omissions and misrepresentations in a disclosure statement is "measured by an objective standard drawn from the definition of 'adequate information' at § 1125(a) that ask what the 'hypothetical reasonable investor typical of holders of claims or interests of the relevant class' would want to know in order to make an informed judgment about the plan." *In re Michelson*, 141 B.R. 715, 725 (Bankr. E.D. Cal. 1992).

Simply stated, the Bankruptcy Code seeks to guarantee a minimum amount of information to creditors. *Century Glove. Inc. v. First American Bank of New York*, 860 F.2d 94 (3d Cir. 1988).

## II.

## BACKGROUND OF THE DEBTOR IN RELATION TO TAB

On March 2, 2009 (the "Petition Date"), Debtors filed a voluntary petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") commencing this Chapter 11 case. Debtors continue to operate their business and manage their properties and assets as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

No trustee or examiner has been appointed. A committee of unsecured creditors was appointed and designated in the case on March 16, 2009.

According to the Disclosure Statement, Debtors operate a long haul trucking company although the enterprise is broken down into four entities to hold and "lease" to the operating company trailers, tractors, and the Debtors' terminal. However, all joint debtor entities comprise a single unified enterprise as represented in Debtors' Motion for Substantive.

### III.

### SPECIFIC OBJECTIONS TO THE ADEQUACY OF THE DISCLOSURE STATEMENT

**1.   *Statements Concerning the Payoff of TAB's Equipment Facilities are Inconsistent.***

The Disclosure Statement correctly states that TAB and TAL have two equipment facilities between them to Debtors, one concerning provisioning of tractors (power units) and the other provisioning trailers. According to Section V of the Disclosure Statement concerning emergence financing, this equipment is to be sold and TAB/TAL to be paid off. The table contained on page 11 shows the expected proceeds and application of funds. The table showing the claims analysis on page 13 shows the Class 1 TAB/TAL claim being paid 100%, states a claim amount, and notes that the amount will vary because TAB/TAL receive payments under the DIP financing facility. However, on page 16 under the discussion of the Class 1 claim, it is stated that TAB and TAL will be paid "***in part***" from the proceeds of the sale of the equipment to the emergence financer, TEL, and then notes that as to TAB's Factoring Agreement, TAB will be allowed to collect out the invoices it has purchased before termination, which assumes TAB will be whole on the A/R advances and that there will be an over-reserve to pay to the Debtor. The confusion is with the statement that TAB and TAL will be paid "in part" from the proceeds of the TEL sale. The implication is that, contrary to the discussions on pages 11 and 13, the TEL proceeds may be insufficient to pay TAB's fully secured claims/lease claims for the equipment.

1005789.1

And, in that light, there is no statement about how and from what source the shortfall will be paid. For informational purposes, TAB needs to know that it will be paid off on the equipment facilities. If the sale will be for less than the amount of the claims, such information would necessarily affect TAB's calculus in voting for or against the Plan.

2. **<u>The Reservation of Rights By the Committee to Challenge TAB's Liens and the Effects Thereof Should be Explained.</u>**

The Disclosure Statement contains some discussion of the fact that the Committee may assert claims that TAB's security interest in the equipment financed by the trailer loan facility (which it purchased from Textron prepetition) may be avoidable. TAB and the Committee entered into a tolling agreement with respect to those claims to facilitate seeking a solution through the Plan or other means. The Debtor also properly notes that the DIP facility gives TAB a superpriority administrative claim for any amounts due under the DIP facility that it does not get paid. The DIP facility rolled up the equipment facilities and the Factoring Agreement into the post-petition financing such that any shortfalls in contractual satisfaction of the equipment facilities would trigger the right to seek satisfaction of the remainder as a superpriority administrative claim. Here, if the Committee sues to avoid TAB's liens on the trailer facility, or, for that matter, the issue is unresolved at confirmation, the sales proceeds will invariably be escrowed or otherwise held, but certainly not irrevocably applied to TAB's note given objections communicated by at least the Committee. At that point, TAB will have the right to have its superpriority administrative claim determined (which would ripen upon the occurrence of such events). This would occur most likely by motion scheduled to be heard concurrently with confirmation of the plan. *See, e.g., Committee of Unsecured Creditors, et al v. Marathon Structured Finance Fund, L.P., et al (In re: SCOPAC),* 624 F. 3d 274, 278-79 (5th Cir. 2010). Determination of TAB's superpriority claim would necessarily involve a request to delay

-6-

payment of other administrative claims which would be junior in priority to the superpriority administrative claim to the extent it is allowed. TAB asserts that this is information that parties in interest should have in considering the Plan.

## CONCLUSION

Based upon the foregoing, TAB requests that the Disclosure Statement not be approved for solicitation and voting, and that, alternatively, the Court order the Debtors to make appropriate changes and supplementations to the Disclosure Statement and that such amendments be noticed for hearing before the Court for consideration of approval for solicitation and voting.

DATED this 3rd day of November, 2011.

>JONES WALDO HOLBROOK & McDONOUGH PC
>
>By:   /s/ Jeffrey Weston Shields
>      Jeffrey Weston Shields (USB #2948)
>      170 South Main Street, Suite 1500
>      Salt Lake City, UT  84101
>      Telephone:  (801) 521-3200
>      Fax:  (801) 328-0537
>      jshields@joneswaldo.com
>      Pro hac vice
>
>By:   /s/ Deborah Caruso
>      Deborah H. Caruso, (Indiana Bar #)
>      DALE & EKE, PC
>      9100 Keystone Crossing, Suite 400
>      Indianapolis, Indiana  46240
>      Telephone:  (317) 844-7400
>      Facsimile:  (317) 574-9426
>      Email:  dcaruso@daleeke.com
>
>*Attorneys for Creditor Transportation Alliance Bank, Inc. and Transportation Alliance Leasing, LLC*

1005789.1

-8-

CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2011, a copy of the foregoing **OBJECTION OF CREDITORS TRANSPORTATION ALLIANCE BANK INC., AND TRANSPORTATION ALLIANCE LEASING, LLC, TO ADEQUACY OF DISCLOSURE STATEMENT OF JOINT DEBTORS DATED SEPTEMBER 10, 2011** was filed electronically and sent through this Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

JONES WALDO HOLBROOK & McDONOUGH PC

By:   /s/ Jeffrey Weston Shields
      Jeffrey Weston Shields (USB #2948)

1005789.1